UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
AMALIA CARRERA,

                    Plaintiff,

   -against-

CITY OF NEW YORK, SERGEANT THOMAS
BOYLE, INSPECTOR COREY individually
and in their official capacity,

                    Defendants.
---------------------------------------------------------------X

CV 12-6302

COMPLAINT
WITH JURY DEMAND

WEINSTEIN, J.
POHORELSKY, M.J.

Plaintiff, AMALIA CARRERA, by and through her attorneys, the law firm of CRONIN & BYCZEK, LLP, as and for her Complaint against Defendants, respectfully sets forth the following:

## NATURE OF ACTION

1. This action is hereby commenced for the purpose of seeking to secure protection of, and to redress the deprivation of, rights secured by the United States Constitution, Americans with Disabilities Act ("ADA"); Rehabilitation Act of 1973; Title VII of the Civil Rights Act of 1964, as amended based on race, gender and retaliation; 42 U.S.C. § 1983, New York State Executive Law § 296, and New York City Human Rights Law § 8-107 et. seq., providing for relief based upon Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's disability, gender, race, and for retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination.

## JURISDICTION

2. The jurisdiction of this Court is invoked based upon federal questions and

pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

3. This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

4. Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5. The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against gender and race discrimination and retaliation in employment based upon ADA, the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6. On or about May 23, 2012, Plaintiff CARRERA, in accordance with applicable law, filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No.: 520-2012-02446 which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended. The Charge was jointly filed with the New York State Division of Human Rights.

7. Said Charge alleged that Defendants engaged in unlawful employment discrimination practices based upon gender, race and in retaliation for engaging in

protected activity. Plaintiff also charged Defendants with failure to reasonably accommodate her due to her disability.

8. On September 21, 2012, the EEOC issued a "Right to Sue" Letter advising Plaintiff of the completion of her prerequisites to file suit in federal court. Plaintiff received said "Right to Sue" Letter on September 26, 2012. A copy of the "Right to Sue" Letter issued to Plaintiff CARRERA is annexed hereto as **Exhibit "A"**.

## VENUE

9. Venue is proper within the Eastern District of this Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of New York, State of New York, and the instant causes of action are based upon violations of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## PARTIES

10. Plaintiff AMALIA CARRERA ("CARRERA") is a Hispanic female citizen of the United States and a resident of Richmond County, State of New York. She has registered her opposition to the discriminatory practices of Defendants and, thus, is a member of a protected class. At all times relevant to this action, Plaintiff CARRERA was a uniformed member of the New York City Police Department from July 2004 until May 2012.

11. Defendant City of New York (hereinafter referred to as "NYC") is a municipal corporation duly organized under the laws of the City and State of New York, having its place of business within the City of New York, and including as its function, operating, managing and financing the New York City Police Department.

12. Upon information and belief, the New York City Police Department (hereinafter referred to as "NYPD") operates under the direct authority of NYC, and is the official NYC agency charged with law enforcement and investigative duties throughout New York City, and maintains control offices at One Police Plaza, New York, New York, along with satellite offices and precincts throughout the City of New York.

13. Defendant SERGEANT THOMAS BOYLE (hereinafter referred to as "BOYLE"), at all times relevant to this complaint, was an NYPD Sergeant and Plaintiff's direct supervisor and superior officer. At all times relevant, SERGEANT THOMAS BOYLE is sued in his individual and official capacities.

14. Defendant INSPECTOR COREY (hereinafter referred to as "COREY"), at all times relevant to this complaint, was an NYPD Inspector and Commanding Officer of the Medical Division and Plaintiff's superior officer. At all times relevant, INSPECTOR COREY is sued in his individual and official capacities.

## FACTS UNDERLYING PLAINTIFFS' CLAIMS

15. At all times relevant to this Complaint, Plaintiff CARRERA is a Hispanic female employed by the NYPD, holding the rank of Police Officer.

16. Plaintiff's date of appointment was July 2004. Plaintiff was constructively discharged and forced to retire on or about May 14, 2012

17. Throughout Plaintiff CARRERA's employment with the NYPD, and prior to Defendants' retaliation against her, she has always had an exemplary performance record, maintaining evaluations of above average.

18. At the time of the events complained of Plaintiff CARRERA had never been disciplined in this or any other employment until she filed complaints with the internal EEO Office of the NYPD.

19. Plaintiff's evaluations have always been above excellent but were lowered since she informed the NYPD that she has had a back disability on or about July 2011.

20. Plaintiff has been discriminated against based upon her disability in that Plaintiff has been denied FMLA leave and reasonable accommodation. Plaintiff was assigned to a desk assignment and permitted to wear civilian clothing because the changing of clothes caused Plaintiff extreme pain. Plaintiff was on medications and painkillers for her back.

21. The NYPD refused to designate Plaintiff as limited/and or restricted duty due to her back condition. Plaintiff's immediate supervisor Defendant BOYLE would make fun of her when Plaintiff had to call in sick and embarrassed and humiliated her because she had permission to wear civilian clothing.

22. Defendant BOYLE has never made fun or humiliated any non-Hispanic White males who called in sick.

23. Plaintiff complained to Defendant BOYLE on numerous occasions regarding perverted comments that he would make in her presence, depicting of photographs of large breasted women, showing of pornographic videos with the use of NYPD computers. Other female officers including P.O. Shira Snyder complained about Defendant BOYLE coming to work drunk.

24. Plaintiff also refused to go to precinct club meetings because the male officers drank too much and acted unprofessionally.

25. As a result of Plaintiff's complaint to Defendant BOYLE, she was given the least desirable assignments which included guarding prisoners and assignments out of the 72nd Precinct; she was removed from an assignment that would allow Plaintiff to accumulate overtime while in a police vehicle regarding the "presidential detail" on July 4, 2011 but was taken off said assignment by Defendant BOYLE and switched to a foot post for sixteen (16) hours.

26. On July 30, 2011, while Plaintiff was on restricted duty due to her disability she arrived at work a few minutes late and was written up by Defendant BOYLE in the minor violation log despite Plaintiff having put in a "lost time report".

27. Plaintiff was refused on numerous occasion days off while other white males who have not filed complaints with Defendant BOYLE routinely were given days off when requested.

28. In October 2011 Plaintiff informed Lt. Jamie Ortiz, a supervisor at the 72nd Precinct that she was being discriminated against by Defendant BOYLE based on her disability and being Hispanic and female and for having complained to Defendant BOYLE in the past about his conduct within the 72nd Precinct.

29. "Under patrol guide regulations" Lt. Ortiz must report any EEO complaint. It is Plaintiff's understanding he did not report my complaint. Shortly thereafter Defendant BOYLE retaliated against Plaintiff by revoking permission to wear civilian clothes, even though Plaintiff had permission and medical support due to her disability while on restricted duty.

30. On or about November 2011, Plaintiff filed a formal EEO complaint with the NYPD.

31. Defendant BOYLE retaliated and created a hostile work environment for Plaintiff after said complaint with EEO by yelling, humiliating and embarrassing Plaintiff in front of her fellow officers to such extent that Plaintiff was to cry. This was witnessed by Lt. Walton who had to intervene to stop Defendant BOYLE from continuing such inappropriate conduct. Plaintiff has never seen Defendant BOYLE treat non-Hispanic white males in such a hostile manner.

32. After Plaintiff filed her formal complaint in November 2011 the retaliation, hostility and hostile work environment escalated. Plaintiff was taken off day tours and given a harder and more arduous tour of 4 p.m. to 12 a.m., with Tuesdays and Wednesdays off causing extreme hardship with her child. Furthermore, this was much more difficult for Plaintiff's physical condition for which she was on restricted duty.

33. In addition, after Plaintiff filed the November 2011 complaint Plaintiff was treated in a disparate and retaliatory manner by being made to bid for vacation time despite fact it is awarded on a seniority basis for everyone who did not file an EEO complaint.

34. Plaintiff complained to her supervisors that this was extremely difficult because she was on pain killers and other medications and had to see doctors. As such, Plaintiff requested a tour change.

35. Plaintiff's request for a tour change was denied without reason. Tour changes are routinely granted for non-Hispanic white males.

36. In January 2012 a plastic rat was placed on Plaintiff's desk. There was no determination as to this incident. The rat was placed on Plaintiff's desk in connection to her prior two EEO complaints. No one has been disciplined or counseled about this

incident which has only added to the hostile work environment.

37. On or about February 16, 2012 Plaintiff applied for FMLA leave and was impermissibly denied despite Plaintiff meeting all the qualifications for FMLA. Non-Hispanic male officers and officers who have not filed EEO complaints are routinely granted FMLA leave.

38. On or about March 2012 Plaintiff appeared for a departmental interrogation (also referred to as a GO-15) pursuant to PG 206-13 in regards to her partner P.O. Yen Chu falsifying police records. Plaintiff was informed by the IAB Lt. Donovan that she was not a subject in the investigation but only a witness.

39. On or about April 23, 2012 Plaintiff was served with Charges and Specifications from IAB Deputy Inspector Edward Armstrong.

40. On or about May 3, 2012 Plaintiff submitted her Family and Medical Leave Act (FMLA) application based on her back which required a discectomy.

41. On or about May 7, 2012 Plaintiff was informed by Lt. Dennedy, Sgt. Mayo and PAA Marshal that her FMLA request was unjustly denied and was told that she needed to submit an additional "hardship packet" and a notarized letter or else she would be forced to return back to work. Soon thereafter Plaintiff did submit the "hardship packet" and letter to no avail.

42. The denial of the FMLA request was made upon information and belief by Defendant COREY who had worked at the 72nd Precinct and was good friends with Defendant BOYLE. Said denial was made in retaliation for Plaintiff having filed complaints against Defendant BOYLE.

43. Within the NYPD, White male officers are routinely granted hardship

leave for reasons as simple as going to school. In Plaintiff's case her hardship was documented in regards to a serious medical condition but was unreasonably denied.

44. As a result of Defendants' failure to reasonably accommodate Plaintiff by granting her FMLA leave along with the hostile work environment and retaliation, Plaintiff's back condition deteriorated and she was forced to resign from the NYPD on May 14, 2012 while her application for Disability Retirement was pending.

45. On or about June 20, 2012 Plaintiff's Disability Retirement Application was denied despite having documented a total disability based on her discectomy.

46. Plaintiff has been treated unfairly and unequally and her opportunity for future employment and career advancement extinguished. Plaintiff is in constant fear of never being gainfully employed again. Plaintiff has been humiliated, embarrassed and made to feel intimated and useless.

47. On or about May 2012, as a result of the discriminatory conduct on the part of the Defendants, Plaintiff was constructively discharged and forced to resign due to their failure to reasonably accommodate her disability.

48. Plaintiff has suffered economic, physical, emotional and mental damages. Plaintiff has stress, loss of hair and has been forced to seek medical treatment for all of this including the loss of sleep.

### AS AND FOR A FIRST CAUSE OF ACTION UNDER THE AMERICANS WITH DISABILITIES ACT

49. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "48" with the same force and effect as if fully set forth herein.

50. At all relevant times, plaintiff has been an individual with a disability within §3(2) of the Americans with Disabilities Act, 42 U.S.C. §12102(2). More particularly, plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of such an impairment, and/or is regarded by defendants as having such an impairment.

51. Plaintiff is a qualified individual with a disability as that term is defined in §101(8) of the ADA, 42 U.S.C. §12111(8). More specifically, plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job.

52. Defendants are and were plaintiff's employer and is covered by the terms of the ADA

53. Defendants have refused to make a reasonable accommodation to plaintiff and/or has dispensed with the reasonable accommodation they had been providing.

54. Defendants have altered the terms and conditions of plaintiff's employment because of her handicap, to including constructively discharging and forcing her retirement.

55. Defendants' failure to make reasonable accommodations to plaintiff's physical disability and their disparate treatment of the plaintiff constitutes discrimination against plaintiff with respect to the terms, conditions, or privileges of employment. Defendants actions constitute a violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. §12112(b)(5)(A).

56. Defendants acted with malice or with reckless indifference to the federally protected rights of plaintiff.

57. As a direct and proximate result of defendants' discrimination on the basis of disability plaintiff has suffered lost wages and benefits and lost employment opportunities.

58. Defendants' failure to make a reasonable accommodation to plaintiff has caused, continues to cause, and will cause plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other nonpecuniary losses.

59. As a consequence of defendants' unlawful employment practices, plaintiff is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS together with interest.

60. Defendants' violation of the ADA was willful, and plaintiff is entitled to punitive damages in the amount of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS.

**AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 AGAINST INDIVIDUAL DEFENDANTS**

61. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "60" with the same force and effect as if fully set forth herein.

62. Throughout the aforementioned events recited herein, the Defendants, while acting under the color of law, subjected the plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, as well as plaintiff's rights under Federal and State statutes.

63. Plaintiff has been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions.

64. As a result of the aforesaid wrongful, reckless and intentional acts of the defendants, the plaintiff has been damaged in the amount of One Million ($1,000,000.00) Dollars.

65. The actions and omissions of the defendants as herein before stated were willful and malicious acts.

66. Based on the foregoing, plaintiff is entitled to punitive and exemplary damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION PURSUANT TO REHABILITATION ACT OF 1973 (29 U.S.C. '794)

67. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "66" with the same force and effect as if fully set forth herein.

68. At all relevant times, plaintiff has been an individual with a disability within '7(8) of the Rehabilitation Act of 1973, 29 U.S.C. '706(8). More particularly, plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of such impairment, and/or is regarded by defendants as having such impairment.

69. Plaintiff is a qualified individual with a disability as that term is defined in '7(8) of the Rehabilitation Act of 1973, 29 U.S.C. §706(8). More specifically, plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job.

70. Upon information and belief, defendants are the recipients of federal financial funding.

71. Defendants have refused to make a reasonable accommodation to plaintiff and/or has dispensed with the reasonable accommodation they had been providing.

72. Defendants have altered the terms and conditions of plaintiff's employment because of her disability, to including constructively discharging and forcing her retirement.

73. Defendants' failure to make reasonable accommodations to plaintiff's physical disability and their disparate treatment of the plaintiff constitutes discrimination against plaintiff with respect to the terms, conditions, or privileges of employment. Defendants actions constitute a violation of '504 of the Rehabilitation Act of 1973, 29 U.S.C. '794.

74. Defendants acted with malice or with reckless indifference to the federally protected rights of plaintiff.

75. As a direct and proximate result of defendants discrimination on the basis of disability or perceived disability plaintiff has suffered lost wages and benefits and lost employment opportunities.

76. Defendants' failure to make a reasonable accommodation to plaintiff has caused, continues to cause, and will cause plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other nonpecuniary losses.

77. As a consequence of defendants' unlawful employment practices, plaintiff is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS together with interest.

78. Defendants' violation of the ADA was willful, and plaintiff is entitled to punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO THE New York STATE EXECUTIVE LAW §296

79. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "78" with the same force and effect as if fully set forth herein.

80. Based on the foregoing, the defendants intentionally and willfully discriminated against the plaintiff in her employment on account of her disability in violation of New York State Executive Law §296.

81. As a result of the defendants' actions and of the deprivations of plaintiff's rights as guaranteed under New York State Executive Law §296, the plaintiff has been damaged.

82. As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, the plaintiff is seeking compensatory and punitive damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A FIFTH CAUSE OF ACTION PURSUANT TO THE NEW YORK CITY HUMAN RIGHTS LAW

83. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "82" with the same force and effect as if fully set forth herein.

84. Based on the foregoing, the defendants intentionally and willfully discriminated against the plaintiff in her employment on account of her disability in violation of New York City Human Rights Law, N.Y.C. Admin. Code '8-107.

85. As a result of the defendants' actions and of the deprivations of plaintiff's rights as guaranteed under New York City Human Rights Law, the plaintiff has been damaged.

86. As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, the plaintiff is seeking compensatory and punitive damages in the amount of FIVE MLLION ($5000,000.00) DOLLARS.

## JURY TRIAL

87. Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that this Honorable Court grant the following relief:

A. For the First Cause of Action against Defendants in the amount of FIVE MILLION ($5,000,000.00) DOLLARS; and THREE HUNDRED THOUSAND ($300,000.00) DOLLARS in punitive damages.

B.  For the Second Cause of Action against Defendants in the amount of FIVE MILLION ($5,000,000.00) DOLLARS;

C.  For the Third Cause of Action against Defendants in the amount of FIVE MILLION ($5,000,000.00) DOLLARS; and THREE HUNDRED THOUSAND ($300,000.00) DOLLARS in punitive damages.

D.  For the Fourth Cause of Action against Defendants in the amount of FIVE MILLION ($5,000,000.00) DOLLARS;

E.  For the Fifth Cause of Action against Defendants in the amount of FIVE MILLION ($5,000,000.00) DOLLARS;

In all causes of action, reasonable attorneys' fees, expert fees, pre-judgment interest, costs of this action and for such other relief as this Court may deem just and proper.

Dated: Lake Success, New York
       December 20, 2012

                                                      **CRONIN & BYCZEK, LLP**

By: _____
ROCCO G. AVALLONE (RA8055)
*Attorneys for Plaintiff*
1983 Marcus Avenue, Suite C-120
Lake Success, New York  11042
(516) 358-1700

| EEOC Form 161 (11/09) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | |
|---|---|---|
| | **DISMISSAL AND NOTICE OF RIGHTS** | |

| To: | Amalia Carrera<br>10 La Grange Place<br>Staten Island, NY 10302 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2012-02446 | Arlean C. Nieto,<br>Supervisory Investigator | (212) 336-3676 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Kevin J. Berry,_
District Director

9-21-2012
*(Date Mailed)*

Enclosures(s)

cc: Thomas P. Doepfner
Assistant Deputy Commissioner
LEGAL BUREAU
One Police Plaza
Room 1406
New York, NY 10038

Linda Cronin
CRONIN & BYCZEK, LLP
Fountains At Lake Success
1983 Marcus Avenue Suite C-120
New Hyde Park, NY 11042